### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| KHADIJA LAAMIME, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | Case No. 1:13-cv-00793-CMH-JFA |
| ) | |
| SANAA ABOUZAID and AYMAN EL ) | |
| TARABISHY, ) | |
| ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
### MOTION FOR PROTECTIVE ORDER REGARDING INFORMATION
### RELATED TO PLAINTIFF'S IMMIGRATION STATUS

Plaintiff Khadija Laamime hereby submits the following Memorandum of Law in support of her Motion for a Protective Order Regarding Information Related to Plaintiff's Immigration Status (Pl. Mtn. or Plaintiff's Motion). On December 13, 2013, Defendants filed their Motion to Compel production of confidential immigration information ("Def.'s Mtn." or "Defendants' Motion") that is both prejudicial and irrelevant to the claims and defenses in this proceeding. *See* Dkt. No. 33. Allowing such discovery would counter well-settled law, contravene congressional intent underlying the Trafficking Victims Protection Act (TVPA) – 22 U.S.C. § 7101 *et seq*, and its subsequent reauthorizations – and risk chilling future civil suits by human trafficking plaintiffs in the Eastern District. Moreover, the prejudicial impact of such disclosure on Plaintiff far outweighs its utility in bolstering Defendants' proposed attack on Plaintiff's credibility and character. Defendants remain free to present their theory of the case without this information, and in fact have already proffered a purported expert report in support of their argument. Accordingly, given Defendants' requests for such information, coupled with their

stated motives for seeking this information, Plaintiff is left with no option but to file this motion for entrance of a protective order foreclosing discovery of her immigration status and any related documentation to prevent discovery of this prejudicial information.  Plaintiff therefore respectfully requests that this Court enter a protective order preventing discovery of Plaintiff's immigration status beyond December 29, 2011, as well as any related documentation.

## I. BACKGROUND

Plaintiff filed her initial complaint on June 27, 2013 (Dkt. No. 1), and her First Amended Complaint on September 20, 2013 (Dkt. No. 23) ("First Am. Compl."). Plaintiff's First Amended Complaint seeks relief under federal law for involuntary servitude, forced labor, trafficking, and violation of the Fair Labor Standards Act, as well as under state law for breach of contract, false imprisonment, and intentional infliction of emotional distress. This case arises from the Defendants' extensive mistreatment of Ms. Laamime throughout 2011, when she served as their housekeeper and nanny. *See* Dkt. No. 23. Defendants imprisoned and exploited Ms. Laamime, subjected her to continuous verbal abuse and threats of deportation, and refused to assist Ms. Laamime in seeking medical care despite severe symptoms representing the onset of stomach cancer. *See* First Am. Compl. ¶¶ 30–75. Further, Defendant Abouzaid leveraged Ms. Laamime's immigration status, which was fully dependent on the Defendants' employment, to instill a climate of fear that coerced Ms. Laamime's involuntary servitude and exploitation. *Id.* at ¶¶ 51–57. Defendant Abouzaid frequently threatened Ms. Laamime by telling her that any misstep would lead to the police coming to get her, and that Ms. Laamime would be deported if she did not obey the Defendants' commands. *Id.* at ¶¶ 54–55.

Discovery began on September 11, 2013 (Dkt. No. 21), and closes on January 10, 2014 (Dkt. No. 25). On October 18, 2013, Defendants submitted their First Requests for Production of

Documents (the "First RFPs"), which included 45 overlapping requests. *See* Ex. A to Def. Mtn. (Dkt. No. 35-2). Request No. 16 sought "[a]ll documents relating to Plaintiff's immigration status, and any application to obtain a visa or legal status in the United States, including, without limitation, any such applications and related documentation that have been filed by or on behalf of Plaintiff from November 2011 through the present." *See* Dkt. No. 35 at 3. On October 28, 2013, the Court entered the Stipulated Protective Order (Dkt. No. 29), which protects Plaintiff's contact information from disclosure to the Defendants or any of their agents, associates and family members (other than counsel). In accord with Local Rule 26(c), Plaintiff thereafter provided her objections to the First RFPs on November 4, 2013, which included objections to the relevance and discoverability of that requested via Request No. 16. *See* Ex. 1, Nov. 4, 2013, Objections to the First RFPs. Plaintiff subsequently produced responsive, non-privileged documents in her possession on November 21, 2013, with a follow-up production of documents received via subpoena on December 13, 2013. *See* Ex. D to Def. Mtn. (Dkt. No. 35-4).

Nonetheless, Defendants submitted their Motion to Compel on December 13, 2013 (Dkt. Nos. 32, 33). Defendants' Motion seeks, in part, to compel production of responsive documentation to Request No. 16. *See* Dkt. No. 35. Prior to submitting their Motion, Defendants proffered Defendant El Tarabishy's First Set of Interrogatories, served on December 6, 2013, which contains two interrogatories directly asking Ms. Laamime to disclose her immigration status and all documents and communications submitted or received in support thereof. *See* Ex. 2, Defendant El Tarabishy's First Set of Interrogatories. Defendants have followed these requests with the proffered expert report of Parastoo Zahedi, a local immigration attorney who opines that Ms. Laamime's only viable option to remain in the United States would

be to pursue a T or U visa. [1]  *See* Ex. 3.  Given the Defendants' continuing focus on this issue, Ms. Laamime hereby respectfully seeks entrance of a protective order foreclosing discovery of her immigration status after December 29, 2011, as well as any related documentation.

## II.     LEGAL STANDARD

Rule 26(c) of the Federal Rules of Civil Procedure permits a court to issue, for good cause, "an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c).  The Supreme Court has interpreted this language as conferring "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

"The party seeking a protective order has the burden of establishing 'good cause' by demonstrating that 'specific prejudice or harm will result if no protective order is granted.'"  *United States ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 565 (E.D. Va. 2010) (quoting *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002)).  The decision to limit or deny discovery by means of a Rule 26 protective order rests on a balancing of various factors: the requester's need for the information from this particular source, its relevance to the litigation at hand, the burden of producing the sought-after material, and the harm which disclosure would cause to the party seeking to protect the information.  *Burka v. United States Dept. of Health and Human Servs.*, 87 F.3d 508, 517 (D.C. Cir. 1996); (citing *Fed. Open Market Comm. of the Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362–63 (1979)).

---

[1]  Plaintiff intends to take appropriate measures in response to this report at the appropriate time called for under the Federal Rules of Civil Procedure, Local Rules, and scheduling orders to date, but at this time simply notes this report for the Court's attention given its direct relevance to the instant dispute.

Indeed, the good cause analysis involves balancing the movant's burden of production and privacy interests against the rights of the opposing party and the public to obtain information. *See Rhinehart*, 467 U.S. at 34–36. "Although the Rule contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule." *See id.* at 35 n.21; *see also Pearson v. Miller*, 211 F.3d 57, 72 (3d Cir. 2000) ("Legitimate interests in privacy are among the proper subjects of this provision's protection."). As detailed below, good cause exists to support a protective order prohibiting discovery of Plaintiff's immigration status after December 29, 2011, as well as any related documentation.

### III. ARGUMENT

#### A. Good Cause Exists to Prevent Discovery of Plaintiff's Immigration Status and Related Documentation Because Such Information Is Irrelevant, Prejudicial and Will Be Used to Improperly Impeach Ms. Laamime's Credibility

Defendants' proffered need for Ms. Laamime's immigration status and related documentation, coupled with the allegations in Plaintiff's Amended Complaint, demonstrate that good cause exists to protect Plaintiff's immigration status and related documentation. Defendants have made clear that their primary avenue of attack is – and will be – to attempt to undermine Ms. Laamime's credibility by suggesting she has fabricated her allegations to support a T-Visa application. This line of inquiry is improper under well-established precedent, and must be foreclosed.

##### 1. Defendants' Stated Motives Cannot Justify Disclosure of Ms. Laamime's Immigration Status and Related Documentation

Defendants admittedly seek to discover Ms. Laamime's immigration status for the following purposes:

> in order to (1) support Defendants' defense that the Plaintiff was motivated to allege that she was the victim of trafficking, and to fabricate facts to that effect, in order to obtain legal status in the United States; and (2) compare the information she provided in support of her application with Plaintiff's allegations in this lawsuit.

Dkt. No. 35 at 4-5. Courts have previously granted protective orders after finding these justifications insufficient to require disclosure of immigration status or related documents. For example, in *EEOC v. Global Horizons, Inc.*, No. 11-00257, 2012 U.S. Dist. LEXIS 182021, at *8-9 (D. Haw. Dec. 21, 2012), the EEOC sought entrance of a protective order preventing discovery regarding the claimants' immigration status after the claimants ceased working for the defendants, who were employers allegedly engaged in workplace conduct similar to that of the Defendants, including threats of deportation and arrest. *Id.* at *7.

For their part, the employer-defendants claimed to seek such information to establish the claimants' "true reason for abandoning the farms," as well as to undermine the claimants' credibility through potentially inconsistent statements made with a motive to falsify such statements. *Id.* at *16-17, *20. In particular, the defendants argued that "information that the Claimants' may have provided on immigration applications regarding trafficking, discrimination, or retaliation in order to obtain T or U nonimmigrant status is directly relevant to the Claimants' motive, bias, and prejudice in this action." *Id.* at *20. They further argued that "whether or not a Claimant has been granted a T or U visa is probative because it may demonstrate that a Claimant had incentive to falsify or overstate allegations of discrimination and participate in this litigation in order to obtain T or U nonimmigrant status." *Id.* at *20-21.

The court disagreed with the defendants, finding that any probative value of this information was far outweighed by the prejudicial effect its disclosure would have on the claimants. *Id.* at *21. Accordingly, the court held that "[a]lthough such information may be

relevant to test the Claimants' credibility, at this early stage in the discovery process, the Court finds that the potential chilling and prejudicial effect of disclosure outweighs the potential value that immigration status information might hold for impeachment purposes." *Id.* The court therefore entered a protective order prohibiting discovery of the claimants' immigration status after they ceased working for defendants, including immigration document numbers. *Id.* at *21-24.

In so finding, the court embraced the Ninth Circuit's decision in *Rivera v. NIBCO, Inc.*, 364 F.3d 1057 (9th Cir. 2004), *cert. denied*, 544 U.S. 905 (2005). In *Rivera*, the Ninth Circuit upheld entry of a protective order when Title VII claimants sought to prevent inquiry into their immigration status. The *Rivera* court found that "discovery of each plaintiff's immigration status constitutes a substantial burden, both on the plaintiffs themselves and on the public interest in enforcing Title VII." *Id.* at 1066. Indeed, the court noted that allowing such disclosure would prevent workers from pursuing litigation for fear that their immigration status would be changed, problems would be revealed, family members would be impacted, or intimidation would result from having one's immigration status examined in a public proceeding. *Id.* at 1065.

Similarly, in *Topo v. Dhir*, 210 F.R.D. 76 (S.D.N.Y. 2002), the defendants argued that the plaintiff's immigration status was a material element of their defenses to false imprisonment and human trafficking claims. The court disagreed, finding first that "[p]laintiff's fears of her immigration status deterring further prosecution of her claims are well-founded." *Id.* at 78. The court further noted that "[c]ourts have generally recognized the *in terrorem* effect of inquiring into a party's immigration status when irrelevant to any material claim." *Id.* In particular, "allowing parties to inquire about the immigration status of other parties, when not relevant, would present a 'danger of intimidation [that] would inhibit plaintiffs in pursuing their rights.'"

*Id.* (quoting *Liu v. Donna Karan Int'l, Inc.*, 207 F. Supp. 2d 191, 193 (S.D.N.Y. 2002)). Accordingly, the court entered a protective order barring the defendants from inquiring into the plaintiff's immigration status, holding that the plaintiff's immigration status was at most "a collateral issue on [each] charge, and thus not relevant to a material aspect of the case." *Id.* at 79.

Disclosure of Ms. Laamime's immigration status and related documentation would impermissibly allow the Defendants to employ their victimization of Ms. Laamime to impeach her credibility. Indeed, the prejudicial impact of such disclosure on Plaintiff far outweighs its utility in bolstering Defendants' proposed attack on Plaintiff's credibility and character. Further, allowing such disclosure would dissuade future victims of human trafficking from reporting similar allegations – lest they be threatened with impeachment and harassment by their own victimization and subsequent immigration status. *Cf.* Fed. R. Evid. 412 advisory committee's note ("Rule 412 seeks to [encourage victims of sexual misconduct to institute and participate in legal proceedings] by barring evidence relating to the alleged victim's sexual behavior or alleged sexual predisposition, whether offered as substantive evidence or for impeachment, except in designated circumstances in which the probative value of the evidence *significantly outweighs* possible harm to the victim.") (emphasis added). Allowing Defendants to indulge in prejudicial discovery to pursue what is effectively victim-blaming should not be tolerated in this Court. *See* S. Rep. No. 102-197 (1991) (finding, in enacting the Violence Against Women Act, that "victim-blaming attitudes are all too pervasive in this country"). Defendants remain free to test the Plaintiff's credibility without this discovery.

Indeed, human trafficking victims are in the United States as a result of exploitation by their traffickers, and their subsequent options for immigration status, such as T or U Visas, are

specially conferred by Congress as a direct result of this exploitation. *See* Victims of Trafficking and Violence Protection Act of 2000 (TVPA), Pub. L. 106–386, 114 Stat. 1464 (2000) (establishing T and U Visas for victims of human trafficking). Congress has also specially created civil causes of action – via the same statutory framework – under which victims of human trafficking can pursue their traffickers. *See* Pub. L. 108-193, 117 Stat. 2875 (2003) (reauthorizing TVPA and creating civil causes of action for use against traffickers in part because "[t]rafficking in persons continues to victimize countless men, women, and children in the United States and abroad"). To allow discovery of Plaintiff's immigration status and related documentation would subject Ms. Laamime's credibility to attack in her quest for civil justice simply by way of potentially having pursued a congressionally created special immigration status designed to *help* victims of human trafficking.[2] Seeking a visa or immigration status specially created by Congress should not, of its own accord, become a basis for impeachment in a civil suit also authorized by Congress via the same legislation. This result would contravene Congress's anti-trafficking policy underlying the TVPA (and its subsequent reauthorizations in 2003, 2005, 2008, and 2013), and severely hinder potential plaintiffs from utilizing the private causes of action specially created for human trafficking victims. *See, e.g.*, Kathleen Kim & Kusia Hreshchyshyn, *Human Trafficking Private Right of Action: Civil Rights for Trafficked Persons in the United States*, 16 Hastings Women's L.J. 1, 4 (2004) (noting that the "addition of a private right of action to the anti-trafficking law is indicative that the state is willing to rely on private actors to enforce the civil rights of trafficked persons"); Statement of Cong. Mark Souder, 151 Cong. Rec. H11577 (Dec. 14, 2005) ("This bill . . . [i]ncludes compassionate,

---

[2] It is important to note that obtaining a T-Visa, for example, is not contingent upon a trafficking victim's pursuit of civil justice. Pursuit of a T-visa remains an option to victims of human trafficking regardless of whether or not a victim pursues their traffickers in a civil lawsuit.

essential provisions to assist victims of human trafficking—those women and children who have seen the worst side of humanity—to put their lives back together."). Such result would also be inconsistent with public policy. *See Liu*, 207 F. Supp. 2d at 193 (denying discovery of immigration status in FLSA case in part because disclosure would increase "danger of intimidation, the danger of destroying the cause of action[,] and [the] inhibit[ion] [to] plaintiffs in pursuing their rights"); *Avila-Blum v. Casa de Cambio Delgado, Inc.*, 236 F.R.D. 190, 192 (S.D.N.Y. 2006) ("[A] witness's credibility is always at issue and may be tested in a variety of ways without imposing an undue burden on a party.").

Accordingly, when faced with similar requests, courts across the country have found an opposing party has no right to obtain a plaintiff's immigration status and related documentation. *See, e.g.*, *Rivera*, 364 F.3d at 1065; *In re Reyes*, 814 F.2d 168, 170 (5th Cir. 1987) (granting mandamus and holding that the plaintiffs' immigration status was "completely irrelevant to the case before it and was information that could inhibit [plaintiffs] in pursuing their rights in the case because of possible collateral wholly unrelated consequences, because of embarrassment and inquiry into their private lives which was not justified, and also because it opened for litigation issues which were not present in the case"); *Topo*, 210 F.R.D. at 78 ("When the potential for abuse of procedure is high, the Court can and should act within its discretion to limit the discovery process, even if relevancy is determined."); *Montoya v. S.C.C.P. Painting Contractors, Inc.*, 530 F. Supp. 2d 746, 749 (D. Md. 2008) (agreeing with "several courts [that] have determined that requests that seek to discover the immigration status of plaintiffs are both irrelevant and prejudicial"); *EEOC v. Global Horizons, Inc.*, No. 11-00257, 2012 U.S. Dist. LEXIS 182021, at *21-22 (D. Haw. Dec. 21, 2012); *see also Liu*, 207 F. Supp. 2d at 193 (denying discovery request because the "danger of intimidation[] [and] the danger of destroying

the cause of action" presents a "risk of injury to the plaintiffs . . . [that] outweighs the need for [immigration information] disclosure."). The same result is warranted here.

### 2. Defendants' Cited Case Is Readily Distinguishable

Defendants' reliance on *EEOC v. Global Horizons, Inc.*, No. CV-11-3045-EFS, 2013 WL 3940674 (E.D. Wash. July 31, 2013), the sole case they cite in support of their Motion, is misplaced. First, in *Global Horizons*, the Eastern District of Washington initially enforced a protective order, and did not lift such order and allow discovery of the plaintiffs' T-Visa applications until the later stages of litigation. Indeed, the court initially *denied* the defendant's motion to compel such information because, "[a]s recognized by a number of other courts, a litigant's immigration status is typically undiscoverable simply for the purpose of challenging the litigant's credibility." *EEOC v. Global Horizons, Inc.*, 287 F.R.D. 644, 650 (E.D. Wash. 2012); *see also Liu*, 207 F. Supp. 2d at 192-93 ("even if such discovery were relevant, and at this juncture it appears not to be, the risk of injury to the plaintiffs if such information were disclosed outweighs the need for its disclosure"). Accordingly, even if disclosure is ultimately warranted, Defendants' own case law does not support such disclosure at this stage in the present litigation.

Second, the *Global Horizons* court improperly limited its inquiry into the potential harm disclosure would cause the plaintiffs. *Global Horizons*, 2013 WL 3940674, at *6. The *Global Horizons* court was only asked to evaluate whether disclosure of the plaintiffs' immigration status might lead to deportation. As such, it concluded that once the plaintiffs filed their T-Visa applications, there was "no evidence before the Court that a Claimant has a justifiable fear of deportation." *Id.* As discussed above, this is just one of many significant concerns such disclosure raises – concerns the *Global Horizons* court, unlike the majority of courts that have addressed this issue, did not reach or weigh in its calculus. Such concerns have been raised by

Plaintiff, namely fear of intimidation or harassment by the Defendants and/or their family members and associates. As such, the Court has permitted Plaintiff to withhold her current contact information from the Defendants. *See* Dkt. No. 29. Absent a proper balancing of interests, the Washington court's opinion in *Global Horizons* has highly limited precedential weight in the present case.

### B. Good Cause Exists to Support Entrance of a Protective Order Because Discovery of Ms. Laamime's Immigration Status and Related Documentation Risks Harassment and Intimidation of Ms. Laamime

Defendants trafficked Ms. Laamime into the United States through fraud and deception for the purpose of subjecting her to involuntary servitude, forced labor, and enslavement. *See* Dkt. No. 23. Given Defendants' history of using Plaintiff's immigration status as a tool of coercion and oppression, Plaintiff also has a reasonable fear that Defendants would use her immigration information to harass and intimidate her.

As such, despite Defendants' contentions, "even if such discovery were relevant . . . the risk of injury to the [P]laintiff[] if such information were disclosed outweighs the need for its disclosure." *Liu*, 207 F. Supp. 2d at 192–93; *see also Topo*, 210 F.R.D. at 79 ("Even with regard to relevant matters, courts have broad discretion to limit or bar discovery altogether"). Indeed, Defendants' instant motion presents precisely the type of threatening behavior and harassment Defendants have pursued in the past to secure Plaintiff's continued involuntary servitude. The potential for continued abuse should Defendants obtain the requested discovery "is precisely the type of 'oppression' Rule 26(c) was designed to prevent." *Id.*

Ms. Laamime therefore respectfully requests that this Court enter a protective order prohibiting discovery of her immigration status from December 29, 2011, to the present, as well

prohibiting discovery of any related documentation. A proposed protective order specifying these terms is appended hereto.

Dated: December 19, 2013

Respectfully Submitted,

/s/ Mary D. Hallerman
Mary D. Hallerman (VSB # 80430)
Jennifer R. Taylor (admitted *pro hac vice*)
Emre N. Ilter (admitted *pro hac vice*)
McDermott Will & Emery LLP
500 North Capitol Street, N.W.
Washington, DC 20001
Telephone:  202-756-8000
Fax: 202-756-8087
Email: mhallerman@mwe.com
Email: jrtaylor@mwe.com
Email: eilter@mwe.com

*Attorneys for Plaintiff Khadija Laamime*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| KHADIJA LAAMIME, )<br>)<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>SANAA ABOUZAID and AYMAN EL )<br>TARABISHY, )<br>)<br>)<br>Defendants. ) | Case No. 1:13-cv-00793-CMH-JFA |

**[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR PROTECTIVE
ORDER REGARDING INFORMATION RELATED TO
<u>PLAINTIFF'S IMMIGRATION STATUS</u>**

It is hereby ORDERED that Plaintiff's Motion for a Protective Order Regarding Information Related to Plaintiff's Immigration Status is GRANTED. Defendants Sanaa Abouzaid and Ayman El Tarabishy are hereby precluded from seeking, obtaining, or otherwise discovering Plaintiff Khadija Laamime's immigration status from December 29, 2011 onward, as well from seeking, obtaining, or otherwise discovering any related documentation.

SO ORDERED

_____
The Honorable John F. Anderson
United States Magistrate Judge

Dated: _____

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2013, a copy of the foregoing was served with the Clerk of Court using the CM/ECF system, and that all counsel of record are registered users and will receive notification of this filing.

/s/ Mary D. Hallerman
Mary D. Hallerman (VSB # 80430)
McDermott Will & Emery LLP
500 North Capitol Street, N.W.
Washington, DC 20001
Telephone: 202-756-8000
Fax: 202-756-8087
Email: mhallerman@mwe.com