IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| KHADIJA LAAMIME, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:13-cv-00793-CMH-JFA |
| SANAA ABOUZAID, et al., | ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION FOR PROTECTIVE ORDER REGARDING INFORMATION RELATED TO PLAINTIFF'S IMMIGRATION STATUS**

Plaintiff Khadija Laamime, by and through her undersigned attorneys, hereby files her Reply in Support of her Motion for a Protective Order Regarding Information Related to Plaintiff's Immigration Status ("Pl.'s Mot."). Defendants' Opposition (Dkt. No. 54) ("Opp. Br."), filed on December 30, 2013, obfuscates the facts and relies upon a nebulous "relevance" concept disconnected from the Rule 26(c) "good cause" standard in an attempt to justify additional discovery into Plaintiff's immigration status. Allowing such additional discovery would contravene Defendants' own cited case law, undermine Congress's purpose in creating the immigration status at issue, and allow Defendants to unfairly benefit from their victimization of Ms. Laamime. As such, good cause justifies foreclosure of additional discovery into Ms. Laamime's immigration status.

**I.    BACKGROUND**

On December 13, 2013, Defendants filed a Motion to Compel, which sought, in part, a response to Defendants' Request for Production No. 16.  *See* Dkt. No. 33.  This Request No. 16 sought:

> All documents relating to Plaintiff's immigration status, and any application to obtain a visa or legal status in the United States, including, without limitation, any such applications and related documentation that have been filed by or on behalf of Plaintiff from November 2011 through the present.

Ex. 1 to Pl.'s Mot. (Dkt. No. 40-1).  On December 20, 2013, this Court granted in part and denied in part Defendants' motion, ordering Plaintiff to produce all immigration applications which have been submitted to the Government.  Plaintiff produced such applications on December 27, 2013.  These documents reflect Plaintiff's application for "deferred action," which is a special immigration status created by Congress to allow victims of human trafficking to remain legally in the United States during the pendency of a victim's civil lawsuit against her traffickers.  *See* Pub. Law 110-457, 122 Stat. 5044, § 203(c)(1)(A) (Dec. 23, 2008) (codified at 8 U.S.C. § 1375c(c)(1)(A) (Supp. 2013)).  These documents were designated as "Attorney's Eyes Only" in accordance with the parties' Stipulated Protective Order (Dkt. No. 29), which requires such designation on documents reflecting Plaintiff's contact information or "any information that

could directly lead a person to determine that current contact information." Because the document contained such information, this designation was proper.[1]

## II. ARGUMENT

### A. Defendants' Opposition Contains Numerous Misstatements of Fact and Law

In an apparent effort to confuse the issues before the Court and distort the facts, Defendants' Opposition includes numerous significant misstatements. First, the Opposition states that the immigration applications include communications with a "previously undisclosed individual." (Opp. Br. at 2.) Defendants appear to be referring to an agent for the United States Government, as this is the only individual referenced therein other than Plaintiff's counsel and the Defendants themselves. As Plaintiff does not intend to use this individual to support her claims, she bears no affirmative obligation to disclose this individual's identity. *See* Fed. R. Civ. P. 26(a)(1)(A)(i) (requiring disclosure of individuals "the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment"). Even if such an obligation somehow existed, upon information and belief, Defendants were previously interviewed by this federal agent, rendering them well aware of her identity and her knowledge of the facts in this case.

Defendants further assert that these applications evidence "additional, undisclosed communications regarding the issues alleged in this lawsuit." (Opp. Br. at 3.) This appears to be

---

[1] Counsel for Defendants contends, without basis, that this designation was improper, and that she "did not have an opportunity to discuss this issue with Plaintiff's counsel prior to filing this brief." (Opp. Br. at 2.) On the contrary, the Stipulated Protective Order requires imposition of an "Attorney's Eyes Only" designation on a document-by-document basis, not a page-by-page basis. Information which could result in Plaintiff's current contact information being determined is indisputably contained within the produced applications, rendering the "Attorneys' Eyes Only" designation proper. Indeed, instead of contacting Plaintiff's counsel to inquire about this designation, Defendants' counsel waited until *after* filing the Opposition to attempt to confer. *See* Ex. A.

a reference to communications between Plaintiff, her counsel, and the United States Government regarding Plaintiff's immigration status.  At the December 20, 2013, hearing, this Court specifically denied Defendants' Motion to compel the production of such materials.  Now, as a result of additional discovery requests issued by the Defendants relating to Plaintiff's immigration status, Plaintiff has been left with no option but to ask the Court to issue a protective order barring any further discovery and use of her immigration status and associated documentation.  *See* Dkt. Nos. 39-40.  Indeed, Defendants' December 6, 2013, interrogatories seek to discover all steps Plaintiff has taken toward obtaining any legal status, as well as detailed descriptions of any and all communications – and even draft documents related to Plaintiff's immigration status.  *See* Dkt. No. 40-2 at 5.[2]  Good cause exists to foreclose additional discovery and use of Plaintiff's immigration status.

### B. The Law Provides No Support for the Additional Immigration Discovery Sought by Defendants

Defendants cite only two readily distinguishable cases from outside the Fourth Circuit in support of their pursuit of additional immigration discovery.  In *EEOC v. Global Horizons, Inc.*,

---

[2] Defendant El Tarabishy's First Set of Interrogatories ask Plaintiff, in part, the following:

**INTERROGATORY No. 1**: Describe in detail your current immigration status and identify any steps that you have taken to obtain a visa or legal status in the United States since you left the Defendants' home, including identifying the type of visa or legal status you have attempted or are attempting to obtain, as well as any application, form or other document that has been drafted or submitted on your behalf in relation to your efforts to obtain a visa or legal status, and describe the outcome or result, if any, of any attempt to obtain a visa or legal status.

**INTERROGATORY No. 2**: If you or anyone on your behalf has communicated with, or provided any information or documentation to, any individual or entity regarding the Defendants, or regarding or related to the facts and circumstances you have alleged in this lawsuit, for any reason that is directly or indirectly related to or arising from any attempt to obtain a visa or legal status in the United States, identify the nature and substance of any such communication, correspondence or information, and how and to whom or from whom such communication, correspondence or information was provided.

No. 11-cv-3045, 2013 WL 3940674 (E.D. Wash. July 31, 2013), the court specifically limited any discovery into the claimants' immigration status to *only* the actual visa applications, materials submitted in support of the applications, and resulting immigration status. *Id.* at *7. Further, in that case, such discovery occurred after most of the claimants were deposed, when the need to investigate specific sworn statements was present. *Id.* at *6. In contrast, Plaintiff's submitted immigration applications have been produced to Defendants' counsel, and Defendants have pointed to no specific statements previously made by Plaintiff that require further discovery. As such, *Global Horizons* does not support Defendants' proposition that additional discovery or any use of Plaintiff's immigration status is warranted at this juncture.

In *Camayo v. John Peroulis & Sons Sheep, Inc.*, No. 10-cv-772, 2012 WL 5931716 (D. Colo. Nov. 27, 2012), the court was faced with a motion to compel, not a protective order, meaning relevance was the operative standard for that ruling. This is not the standard for protective orders under Rule 26(c). Indeed, as the *Global Horizons* court noted, in evaluating a proposed protective order a court must "assess whether the requested immigration information is relevant, and then, if it is relevant, balance each party's respective interests." 2013 WL 3940674, at *5. Therefore, establishing relevance is only the first step. Defendants offer no principled, particularized reason as to their need for any additional discovery regarding Ms. Laamime's immigration status beyond the submitted applications, and the subsequent use of this information other than to support general credibility challenges untethered from specific lines of inquiry. As further explained below, such general justifications are heavily outweighed by the specific prejudice disclosure would impose upon Plaintiff.

### C. Allowing Further Immigration Discovery and Use of Plaintiff's Immigration Status Would Undermine Congress's Purpose and Intent in Creating the Deferred Action Status

Allowing further discovery relating to Ms. Laamime's immigration status would contravene the very purpose of deferred action status, and impose a significant chilling effect upon trafficking plaintiffs considering bringing suit before this Court. Deferred action status was created by Congress through the Trafficking Victim's Protection Reauthorization Act of 2008. *See* Pub. Law 110-457, 122 Stat. 5044 (Dec. 23, 2008). The original Trafficking Victim's Protection Act ("TVPA"), passed in 2000, was expressly designed "to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, *to ensure just and effective punishment of traffickers*, and to protect their victims." Pub. L. 106-386, 114 Stat. 1466, § 102(a) (codified as amended at 22 U.S.C. § 7101) (emphasis added). The TVPA was amended in 2003, when Congress added what became 18 U.S.C. § 1595, which authorizes victims of trafficking to pursue civil actions against their traffickers. *See* Pub. L. 108-193, 117 Stat. 2875 (2003) (reauthorizing TVPA and creating civil causes of action for use against traffickers because "[t]rafficking in persons continues to victimize countless men, women, and children in the United States and abroad").

The 2008 reauthorization of the TVPA added deferred action status, expanded "continued presence" (which allows trafficking victims to remain in the United States to aid federal prosecutors), and expanded Congress's previously created criminal and civil causes of action against traffickers. *See* Pub. Law 110-457, 122 Stat. 5044, at § 203(c)(1)(A) (deferred action status); § 205 (continued presence expansion); §§ 221-223 (revising and expanding scope of trafficking statutes and relevant statutes of limitation). The deferred action provision states:

> if a nonimmigrant holding an A–3 visa or a G–5 visa working in
> the United States files a civil action under section 1595 of title 18,

> United States Code, or a civil action regarding a violation of any of the terms contained in the contract or violation of any other Federal, State, or local law in the United States governing the terms and conditions of employment of the nonimmigrant that are associated with acts covered by such section, the Attorney General and the Secretary of Homeland Security shall permit the nonimmigrant to remain legally in the United States for time sufficient to fully and effectively participate in all legal proceedings related to such action.

*See* Pub. Law 110-457, 122 Stat. 5044, § 203(c)(1)(A) (Dec. 23, 2008) (codified at 8 U.S.C. § 1375c(c)(1)(A) (Supp. 2013)).  The creation of deferred action served "to enhance measures to combat trafficking in persons."  *See* Pub. Law 110-457, 122 Stat. 5044 (Dec. 23, 2008).

Allowing further discovery of Ms. Laamime's immigration status would contravene this purpose and discourage pursuit of civil actions that were specifically created *by the same legislation* to combat trafficking in persons.  Indeed, deferred action status solely allows victims of human trafficking to remain in the United States so they can pursue civil causes of action – which were also created by the TVPA – against their traffickers.  To allow the use of this status in an offensive manner against a victim of human trafficking would materially hinder a victim's ability to sue her traffickers, a key purpose of the law.  The resulting severe prejudice to Ms. Laamime, as a victim of human trafficking, and the resulting *in terrorem* effect on future civil suits outweighs any potential relevance of this information and is an expressly recognized basis for granting a protective order prohibiting additional discovery or use of a plaintiff's immigration status.  *See* Pl.'s Mot. (Dkt. No. 40) at 8-10 (citing cases in support).  Indeed, "a witness's credibility is always at issue and may be tested in a variety of ways without imposing an undue burden on a party."  *Avila-Blum v. Casa de Cambio Delgado, Inc.*, 236 F.R.D. 190, 192 (S.D.N.Y. 2006).  Defendants have now received the submitted immigration applications and can test Plaintiff's credibility in a variety of ways unrelated to immigration status.

### D. Allowing Further Discovery Would Allow the Defendants to Benefit From Their Victimization of Ms. Laamime

As detailed in Plaintiff's Amended Complaint (Dkt. No. 23), she is present in the United States due to the actions of the Defendants. In 2011, Ms. Laamime's immigration status hinged on her employment, and this was used as a tool by the Defendants to coerce her continued labor during that year. *See* Dkt. No. 23 ¶¶ 22, 40, 52, 66. Indeed, Defendants' behavior and refusal to aid Ms. Laamime in seeking medical care ultimately became so intolerable that Ms. Laamime was forced to escape so she could obtain medical care and ultimately seek recourse against Defendants. *See* Dkt. No. 23 ¶¶ 65-75. To allow Defendants to obtain further discovery regarding Ms. Laamime's immigration status and use this information against her would allow them to continue to use the immigration process as a means of intimidating Plaintiff. Indeed, the potential prejudice faced by Plaintiff is high, as the requested intrusive discovery risks intimidating Plaintiff as it could result in public disclosure of her immigration status. Having already received the filed immigration applications, Defendants have received sufficient discovery on this point to test credibility – any further information and discovery about her status bears *no relevance* on any issue in this case and would be prejudicial.

Ms. Laamime therefore respectfully reiterates her request that this Court enter a protective order prohibiting any further discovery relating to her immigration status from December 29, 2011, to the present, as well prohibiting discovery of any related documentation in this case. A revised proposed protective order specifying these terms is appended hereto in the wake of the Court's December 20, 2013, ruling and Plaintiff's intervening production.

Dated: January 2, 2014

Respectfully Submitted,

/s/ Mary D. Hallerman
Mary D. Hallerman (VSB # 80430)
Lauren D'Agostino (VSB # 80275)
Jennifer R. Taylor (admitted *pro hac vice*)
Emre N. Ilter (admitted *pro hac vice*)
McDermott Will & Emery LLP
500 North Capitol Street, N.W.
Washington, DC 20001
Telephone:  202-756-8000
Fax: 202-756-8087
Email: mhallerman@mwe.com
Email: ldagostino@mwe.com
Email: jrtaylor@mwe.com
Email: eilter@mwe.com

*Attorneys for Plaintiff Khadija Laamime*

## CERTIFICATE OF SERVICE

I hereby certify that on January 2, 2014, a copy of the foregoing was served with the Clerk of Court using the CM/ECF system, and that all counsel of record are registered users and will receive notification of this filing.

/s/ Mary D. Hallerman
Mary D. Hallerman (VSB # 80430)
McDermott Will & Emery LLP
500 North Capitol Street, N.W.
Washington, DC 20001
Telephone: 202-756-8000
Fax: 202-756-8087
Email: mhallerman@mwe.com